UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| LORENZO R. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-01917-MPB-MJD |
| | ) | |
| DHL EXCEL SUPPLY CHAIN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Pro se Plaintiff Lorenzo R. Taylor filed suit against his former employer, Defendant Exel

Inc. d/b/a DHL Supply Chain (USA) ("DHL"),[1] alleging violations of the Age Discrimination in

Employment Act of 1967 ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and

the Family and Medical Leave Act ("FMLA") as a result of his termination. DHL filed a Motion

for Summary Judgment. (Docket No. 20). For the following reasons, that Motion, (Docket No.

20), is **GRANTED**.

I.      **Background**

A.      **Local Rule Compliance**

As an initial matter, the Court notes the deficiencies in Plaintiff's summary judgment

briefing. Defendant DHL's supporting brief properly sets forth a "Statement of Material Facts

Not in Dispute," and includes citations to record evidence supporting these factual assertions.

(Docket No. 21 at ECF pp. 2–9). As the non-movant, Plaintiff is required by local rules to

include a section labeled "Statement of Material Facts in Dispute" in his response brief, which he

did not do. (Docket No. 24); S.D. Ind. L.R. 56-1(b). The local rules also direct that Plaintiff

---

[1] Defendant DHL was incorrectly identified as "DHL Excel Supply Chain." (*See* Docket No. 21 at ECF p. 1).

"support each fact [he] asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence." S.D. Ind. L.R. 56-1(e). Plaintiff fails to provide proper citations for any asserted facts. The local rules "require that assertions of fact be supported by specific citations," *Hinterberger v. City of Indianapolis*, No. 1:16-cv-1341, 2019 WL 1439159, at *3 (S.D. Ind. Mar. 30, 2019) (citation modified), and a "failure to respond by the nonmovant as mandated by the local rules results in an admission" of the asserted facts, *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003); S.D. Ind. L.R. 56-1(f)(1).

### B.    Relevant Facts

Plaintiff, a fifty-eight-year-old black man, worked for DHL as a forklift operator in its Plainfield, Indiana, facility beginning in October 2021. (Docket Nos. 22-1 at ECF pp. 22–26; 22-2 at ECF pp. 22, 98; 24-1 at ECF p. 5). Upon hire, Plaintiff received an offer letter and employee handbook, both of which he signed. (Docket Nos. 22-1 at ECF pp. 24, 33; 22-2 at ECF pp. 1–25). Both documents explain that Plaintiff's employment was at-will. (Docket No. 22-2 at ECF pp. 1, 22). And the employee handbook outlines DHL's attendance and leave-of-absence policies. (*Id.* at ECF pp. 26–30, 37–48).

Under DHL's attendance policy, employees must maintain an "[a]ttendance [b]alance" "through a series of withdrawals and credits." (*Id.* at ECF pp. 26–30). Full-time employees are provided an initial deposit of sixty-four hours upon hire. (*Id.* at ECF p. 27). When an employee is absent or tardy without preapproval, time is withdrawn from their attendance balance. (*Id.*). And each unapproved absence or tardy is "treated as a unique withdrawal of time at a minute-for-minute rate." (*Id.*). So, if an employee were absent for a ten-hour shift without preapproval, their attendance balance would incur a ten-hour withdrawal. (*Id.*). Employees can also earn attendance balance credits, for instance, if the employee "stays below the withdrawal limit for their payroll

classification" each month. (*Id.*). DHL's attendance policy outlines the corrective action for low attendance balances. (*Id.* at ECF pp. 29–30). At twenty-five hours or less, full-time employees are issued a written notification. (*Id.* at ECF p. 29). At thirteen hours or less, full-time employees are issued a final written notification. (*Id.*). And at zero hours, full-time employees are issued a termination notification. (*Id.* at ECF p. 30).

Prior to Plaintiff's hire, DHL's attendance policy was based on "occurrences" rather than hours. (Docket No. 22-3 at ECF p. 1). Under the occurrence-based policy, unapproved absences and tardies would result in a number of occurrences. (*Id.* at ECF p. 2). And if an employee was absent for multiple days due to illness, then they were allowed to submit a doctor's note, limiting the occurrences an employee received to one. (*Id.*). The submission of a doctor's note limited the number of occurrences an employee received but did not prevent an employee from receiving any occurrences at all. (*Id.*). Over a year before Plaintiff's hire, the attendance policy was updated and eliminated the doctor's note provisions. (*Id.*).

DHL also maintains a leave-of-absence policy. (Docket No. 22-2 at ECF pp. 37–48). Under this policy, employees have thirty days to report used FMLA time, and they may report it fifteen days prior to use or fifteen days after use. (*Id.* at ECF p. 41). In boldface, the policy states that "failure to provide the necessary notice of the need for FMLA leave or to provide the necessary documentation supporting the leave within the time required may result in your FMLA leave being delayed or denied altogether." (*Id.*) (emphases omitted). The policy also notes that "[l]eaves generally are not counted as time worked for incentive plan purposes." (*Id.* at ECF p. 42).

On November 6 and 7, 2023, Plaintiff was absent from work without preapproval and for reasons unrelated to FMLA leave. (Docket No. 22-1 at ECF pp. 88–89, 126–27). Plaintiff texted

3

his supervisor, Blake Bissonnette, on November 6, telling him he was "[h]aving health issues" and "[d]oc got me off until November 8th. I'll bring in a statement[.]" (*Id.* at ECF p. 107). Bissonnette asked when the statement could be brought in to work, and Plaintiff replied he could send a photo of the statement, which he did. (Docket No. 22-2 at ECF p. 36). Plaintiff asked, "[w]ill this work?," to which Bissonnette replied, "Yes sir thank u hope u feel better." (*Id.*). After Plaintiff returned to work, he sent an email to DHL's Operations Manager, Chris Chavous, "concerned about [his] doctor statement not excusing [his] absence[s]," and conveyed his belief that a doctor's note had excused absences for "other employees." (*Id.* at ECF p. 35). Chavous contacted DHL's General Manager, Jacob Beard, about Plaintiff's concern and indicated that Jacob Gray was one of the "other employees" mentioned by Plaintiff. (*Id.* at ECF p. 34). Gray, a former forklift operator, was terminated from DHL for attendance in January 2024. (Docket No. 22-3 at ECF p. 2). Beard relayed to Chavous that Gray's absences were not excused, and that doctor's notes did not excuse absences under DHL policy. (Docket No. 22-2 at ECF p. 34).

Plaintiff raised the issue with Chavous again in March 2024, telling Chavous his attendance balance should have sixteen additional hours from the two absences. (*Id.* at ECF p. 51). Chavous explained the absences were not excused pursuant to DHL policy. (*Id.*). Plaintiff identified Jacob Gray again in addition to another employee named "Jason" as employees who were allowed to excuse absences with doctor's notes. (*Id.* at ECF pp. 51–53; Docket No. 22-1 at ECF pp. 146–48). Jason Allen, the only employee named Jason, confirmed he had never attempted to have an absence excused by a doctor's note. (Docket No. 22-3 at ECF p. 3). In his deposition, Plaintiff also named Bissonnette as an employee who was permitted to submit a doctor's statement. (Docket No. 22-1 at ECF pp. 101, 146–47). Mark Wittenauer, Human

4

Resources Director for DHL, confirmed that Bissonnette was never permitted to submit a doctor's statement after the attendance policy's revision. (Docket No. 22-3 at ECF p. 3).

On June 11, 2024, DHL issued a written attendance notification to Plaintiff, whose attendance balance had fallen to 22.57 hours. (Docket No. 22-2 at ECF p. 55). Then, on June 18, after DHL became aware that Plaintiff failed to properly report his absences for two eight-hour shifts, DHL issued a final written notification to Plaintiff, whose attendance balance was 6.57 hours. (*Id.* at ECF pp. 56–57). On September 5, Plaintiff texted Chavous that he would not make it in that day and would be "us[ing] FMLA." (*Id.* at ECF p. 58). Chavous replied that Plaintiff did not have enough FMLA leave left to "fully cover" his shift. (*Id.*). Plaintiff continued to text Chavous the next three workdays that he would not be coming in and that he "will request FMLA." (*Id.* at ECF p. 59). After the fourth text from Plaintiff, Chavous again confirmed with Plaintiff that he did "not have any FMLA to use." (*Id.*). Due to these unapproved absences, Plaintiff's attendance balance fell to -23.22 hours. (*Id.* at ECF p. 61). DHL terminated Plaintiff on September 12, 2024. (*Id.*).

Plaintiff filed this lawsuit in October 2024, alleging age and race discrimination, as well as FMLA violations. (Docket Nos. 1; 1-1). DHL filed a Motion for Summary Judgment, (Docket No. 20), which Plaintiff opposed, (Docket No. 24).

## II.    Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Jaranowski v. Ind. Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In reviewing summary judgment motions, this Court must view the evidence and draw all

reasonable inferences in the light most favorable to the nonmoving party. *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). Yet inferences supported "by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007). Because courts must not "scour the record in search of evidence to defeat a motion for summary judgment," the nonmoving party has the duty and "responsibility of identifying the evidence upon which [it] relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

## III.    Discussion

Plaintiff brings claims pursuant to the ADEA, Title VII, and the FMLA, and DHL seeks summary judgment on all claims. The Court begins with Plaintiff's ADEA and Title VII claims, which concern Plaintiff's allegation that DHL "recognize[s] [doctor's] note[s] when they want to, and all of [the] ben[e]factors are young white males." (Docket No. 1 at ECF p. 3). Plaintiff alleges this "[d]iscrimination pertaining to [d]octor['s] note[s] . . . ultimately caused [DHL] to terminate [his] employment." (*Id.* at ECF p. 4).

The ADEA prohibits employers from engaging in age-based discrimination against employees forty years of age and older. 29 U.S.C. § 623(a)(1); *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018). And, under Title VII, employers are prohibited from engaging in race-based discrimination. 42 U.S.C. § 2000e-2(a)(1). Two paths exist to survive summary judgment on ADEA and Title VII claims—the burden-shifting framework of *McDonnell Douglas* and the holistic approach of *Ortiz. Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957, 960 (7th Cir. 2021) ("Title VII and ADEA causation standards are not always the same," but the "statutes nevertheless share similar analytical approaches . . . at summary judgment.") (citation modified). Regardless of the path taken, the Court will consider the evidence "as a whole, rather

than asking whether any particular piece of evidence proves the case by itself." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Relying on the *McDonnell Douglas* framework, DHL argues that Plaintiff's age and race discrimination claims fail as a matter of law. Under *McDonnell Douglas*, Plaintiff must "make a prima facie case of discrimination, at which point the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext." *Purtue v. Wis. Dep't of Corr.*, 963 F.3d 598, 601–02 (7th Cir. 2020). To make his prima facie case, Plaintiff must show he (1) belongs to a protected class, (2) met his employer's legitimate expectations, (3) suffered an adverse employment action, and (4) was similarly situated to other employees who were not members of the protected class and who were treated better. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Plaintiff's ADEA and Title VII claims fail for the same reasons—Plaintiff has not established a prima facie case of age or race discrimination, much less shown that DHL's stated reason for his termination was pretextual. Plaintiff has not demonstrated he was meeting DHL's legitimate expectations, as evidenced by his negative attendance balance of over twenty-three hours. (Docket No. 22-2 at ECF pp. 30, 61). Nor has Plaintiff identified any similarly situated employees who were treated better than him. Plaintiff points to three former colleagues, who according to Plaintiff, may have had past absences excused by a doctor's note. But the undisputed evidence shows that none of the identified employees—Jacob Gray, Jason Allen, and Blake Bissonnette—were permitted to submit a doctor's note for that purpose and therefore could not have been treated more favorably than Plaintiff. (Docket Nos. 22-2 at ECF p. 34; 22-3 at ECF pp. 2–3). And, even if Plaintiff could make a prima facie case, Plaintiff has not shown that

DHL's stated reason for his termination—his negative attendance balance—was pretextual. DHL abided by its attendance policy when it refused to accept Plaintiff's doctor's note to excuse his two absences. (Docket Nos. 22-2 at ECF pp. 34, 51; 22-3 at ECF p. 2). Regardless, Plaintiff's attendance balance would have been negative and justified his termination under DHL policy if the two absences totaling sixteen hours were not withdrawn. Absent evidence his termination was based on any reason other than attendance, Plaintiff's claims must fail. Thus, DHL's Motion for Summary Judgment, (Docket No. 20), as to the ADEA and Title VII claims is **GRANTED**.

Plaintiff's FMLA claims fare no better. Plaintiff alleges that DHL "[r]epeatedly overlooked [him] for exceptional job service because of [his] FMLA status and violated [the] FMLA policy of not giving [him] acc[ru]ed points for perfect attendance aside from FMLA days [taken]." (Docket No. 1-1 at ECF p. 1). Plaintiff failed to address his claim that he was overlooked due to FMLA status in opposition to summary judgment, so that claim is abandoned. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597–98 (7th Cir. 2003). As to his claim that DHL violated the FMLA by denying Plaintiff attendance credit where he did not meet DHL's attendance goal due to his leave, Plaintiff does not articulate how DHL's conduct violates the FMLA. To the contrary, Plaintiff cites the federal regulations governing the FMLA in his response brief, which provide that if an employee incentive is based on the completion of a "specified goal such as . . . perfect attendance, and the employee has not met the goal due to FMLA leave, then the [incentive] may be denied, unless otherwise paid to employees on an equivalent leave status for a reason that does not qualify as FMLA leave." 29 C.F.R. § 825.215(c)(2). DHL's leave-of-absence policy provides that "[l]eaves generally are not counted as time worked for incentive plan purposes." (Docket No. 22-2 at ECF p. 42). Thus, for Plaintiff to establish that DHL violated the FMLA, he would have to show DHL "deviated from its policy

8

or practice for other employees on non[-]FMLA leave." *Carter v. Chi. State Univ.*, No. 10 C 321, 2013 WL 3975009, at *8 (N.D. Ill. Aug. 1, 2013). But Plaintiff makes no such showing. In the absence of evidence, Plaintiff's FMLA claim must fail. Accordingly, DHL's Motion for Summary Judgment, (Docket No. 20), as to the FMLA claims is **GRANTED**.

## IV.    Conclusion

Defendant's Motion for Summary Judgment, (Docket No. 20), is hereby **GRANTED.**

Final judgment shall issue by separate entry.

**IT IS SO ORDERED.**

Date:    06/05/2026

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

LORENZO R. TAYLOR
5251 Pin Oak Drive
Indianapolis, IN 46254

Haley Crum
Frost Brown Todd LLP
hcrum@fbtgibbons.com

Amy Suzanne Wilson
Frost Brown Todd LLC
awilson@fbtgibbons.com